# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN TAYLOR,<br><br>             Plaintiff,<br><br>vs.<br><br>G. STRATTON, et al.,<br><br>             Defendants. | CASE NO. 05-CV-1963-H (RBB)<br><br>**ORDER DISMISSING WITH PREJUDICE PLAINTIFF'S COMPLAINT** |

      Plaintiff Shawn Taylor is a state prisoner proceeding pro se. He initially filed this civil rights action in the Los Angeles Superior Court on May 23, 2005. (Doc. No. 1.) Defendants removed the case to the United States District Court for the Central District of California on July 29, 2005. (Id.) Defendants filed a motion to dismiss based on improper venue, and the action was transferred to this Court. (Id.)

      Defendants Stratton, Butler, Leapheart, Schoch, Rowe, Carpio, Calipatria State Prison ("Calipatria"), and California Department of Corrections and Rehabilitation ("CDC") filed their motion to dismiss on February 27, 2006. (Doc. No. 4.) Defendant Edwards has not been served with the complaint. Plaintiff filed his opposition to Defendants' motion to dismiss on May 2, 2006, (Doc. No. 9.), and Defendants filed a reply on May 16, 2006. (Doc. No. 11.) Magistrate Judge Brooks filed a Report and Recommendation on July 21, 2006. (Doc. No. 12.) Defendants filed an objection on

August 17, 2006. (Doc. No. 13.) For the reasons stated below, the Court GRANTS the motion to dismiss, and the Court DISMISSES Plaintiff's complaint.

## Background

During all relevant times, Plaintiff was incarcerated by CDC. Plaintiff was housed at Calipatria until August 14, 2002, when he was transferred to California State Prison at Lancaster in Los Angeles County ("Lancaster"). (Compl. ¶ 21.) Plaintiff alleges that on August 6, 2002, Defendant Rowe, a correctional officer at Calipatria, issued Plaintiff a rules violation report ("RVR"). (Id. ¶ 15.) The RVR indicated that Correctional Officer Mosley told Defendant Rowe that Plaintiff refused to submit to DNA testing as required by California Penal Code § 296. (Id. ¶¶ 15-16.) According to Plaintiff, Defendant Rowe was not present during the conversation between Plaintiff and Mosley, and Plaintiff asserts that Defendant Rowe violated California Code of Regulations, title 15, § 3025(h) by not providing him written notice of CDC's intent to collect a DNA sample. (Id. ¶¶ 16-18.)

According to Plaintiff, when he received the RVR he requested both an Investigative Employee and a Staff Assistant from Defendant Doe One. (Id. ¶ 19.) Plaintiff did not receive the services of either an Investigative Employee or a Staff Assistant, however, and the request form Plaintiff attached to his complaint, which contains his signature, indicates that he waived his right to request an Investigative Employee. (Id. ¶ 20 & Ex. B.)

On September 5, 2002, approximately three weeks after Plaintiff was transferred to Lancaster, Defendant Stratton, a correctional lieutenant, held a hearing on the RVR at Calipatria. (Id. ¶ 22.) Although the report on the hearing indicates that Plaintiff was present and testified at the hearing, Plaintiff maintains that Defendant Stratton conducted the hearing outside of Plaintiff's presence and that Defendant Stratton falsified those portions of the report indicating otherwise. (Id. ¶¶ 22-26 & Ex. A.) Defendant Stratton found Plaintiff guilty of refusing to provide a DNA sample and assessed him a penalty of sixty days loss of credits. (Id. Ex. A.) According to Plaintiff,

he did not learn of this finding until he applied for honor housing at Lancaster and was informed that he was not eligible because of the September 2002 rules violation. (Id. ¶ 35.)

Plaintiff appealed the guilty finding and loss of credits, and on October 1, 2004, Acting Chief Deputy Warden Ochoa at Calipatria partially granted Plaintiff's appeal. Warden Ochoa determined that a due process violation had occurred because Plaintiff was not present at the hearing and because the report did not indicate that Plaintiff was transferred to Lancaster or that he had appeared telephonically. (Id. Ex. C.) Warden Ochoa's memorandum indicated that a modification order would issue dismissing the rules violation, expunging all documentation related to the violation, and restoring all privileges. (Id.) Further, Warden Ochoa indicated that any remaining credit forfeiture related to the violation would be restored, and he indicated that Plaintiff could reapply to the honor housing program. (Id.)

After his successful appeal, Plaintiff filed another appeal with Jeanne Woodford, the director of CDC, and he submitted a claim for damages to her. (Id. ¶ 42.) He also submitted a claim to the State Board of Control, which, according to Plaintiff, accepted the appeal but declined to process it. (Id. ¶ 42-43.) On February 1, 2005, CDC declined to review his appeal or to take any disciplinary actions against the individuals named in Plaintiff's complaint. (Id. ¶ 44.) Subsequently, Plaintiff filed this action.

Plaintiff's complaint contains four counts, in which he asserts various claims alleging violation of the following constitutional, regulatory, and statutory provisions: (1) due process; (2) equal protection; (3) California Code of Regulations, title 15, §§ 3025(h), 3315(d)(1) (A) & (B), 3320(g), and 3320.1(a) & (b); (4) California Penal Code § 132; and (5) California Civil Code § 1714(a). (Compl. ¶¶ 14-45.) Finally, Plaintiff asserts that several Defendants acted negligently in supervising or disciplining subordinates. (Id. ¶¶ 29-30, 44.)

In their motion, Defendants argue that Plaintiff's complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon

which relief can be granted. Defendants make four arguments in support of their motion. First, they argue that, because Calipatria and CDC are not persons within the meaning of 42 U.S.C. § 1983, they cannot be held liable. Second, they argue that Plaintiff's claims are not cognizable under § 1983 because they are all based on violations of state law. Third, they argue that Plaintiff's claims are moot because any deprivation was cured on administrative appeal. Finally, they argue that Plaintiff has failed to set forth a claim for supervisory liability.

**Discussion**

**A.   Legal Standards**

**1.   Review of Magistrate's Report and Recommendation**

The district court "shall make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). The Court also reviews de novo the magistrate judge's conclusions of law. Britt v. Simi Valley Unified School Dist., 708 F.2d 452, 454 (9th Cir. 1983) overruled on other grounds by United States v. Reyna-Tapia, 328 F.3d 1114, 1121-22 (9th Cir. 2003).

**2.   Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)**

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is reviewed de novo. Monterey Plaza Hotel Ltd. v. Local, 215 F.3d 923, 926 (9th Cir. 2000). Rule 12(b)(6) permits the Court to dismiss a claim which is not legally sufficient. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2002). "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Id. (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988)). In considering the motion, the Court must accept all material allegations and reasonable inferences which can be drawn from the complaint as true. Id. (citing Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 338 (9th Cir. 1996)). "When a plaintiff has attached various exhibits to the complaint, those exhibits may be

considered in determining whether dismissal was proper without converting the motion to one for summary judgment." Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995) (citing Cooper v. Bell, 628 F.2d 1208, 1210 n.2 (9th Cir.1980)).

In a § 1983 action where the plaintiff is proceeding pro se, the court must construe his pleadings liberally. Karim-Panahi v. Los Angeles Police Dep't., 839 F.2d 621, 623 (9th Cir. 1988) (citing Bretz v. Kelman, 773 F.2d 1026, 1027 (9th Cir. 1985)). The court must grant leave to amend the complaint unless it is clear that amendment could not cure the complaint's deficiencies. Id. (quoting Noll v. Carlson, 809 F.2d 1446, 1447 (9th Cir. 1987) (internal citations omitted)). The plaintiff must still allege specific, overt acts which support his claims. See Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984); see also Ivey v. Bd. of Regents of the Univ. Of Alaska, 673 F.2d 266, 268 (9th Cir. 1982) (stating "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss."). Even though the plaintiff's claims are to be liberally construed, the court must determine whether the pro se plaintiff can prove no set of facts which would support his claim and entitle him to relief. Ortez v. Washington County, State of Or., 88 F.3d 804, 807 (9th Cir. 1996) (citing Jones, 733 F.2d at 649).

### 3. Sua Sponte Dismissal

The Prison Litigation Reform Act requires courts to review complaints filed by prisoners against officers or employees of governmental entities. In particular, 28 U.S.C. § 1915A(a) provides that "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." Section 1915A(b)(1) provides that sua sponte dismissal is appropriate if the court finds that the complaint, or any portion of the complaint "fails to state a claim upon which relief can be granted[.]"

The statutory language clearly authorizes screening regardless of the prisoner litigant's fee status. Rowe v Shake, 196 F.3d 778, 781 (7th Cir. 1999). In fact, the

1  Second, Fifth, Sixth, Ninth and Tenth Circuits have all held that the mandatory
2  screening provisions of § 1915A apply to all prisoners, no matter their fee status, who
3  bring suit against a governmental entity, officer, or employee.  See, e.g., Resnick v.
4  Hayes, 213 F.3d 443, 446-47 (9th Cir. 2000); Carr v. Dvorin, 171 F.3d 115, 116 (2d
5  Cir. 1999); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998); Benson v. O'Brian,
6  179 F.3d 1014, 1017 (6th Cir. 1999); Plunk v. Givens, 234 F.3d 1128, 1129 (10th Cir.
7  2000).  As with motions to dismiss brought under Fed. R. Civ. P. 12(b)(6), "[u]nder §
8  1915A, when determining whether a complaint states a claim, a court must accept as
9  true all allegations of material fact and must construe those facts in the light most
10 favorable to the plaintiff."  Resnick, 213 F.3d at 447.

11 **B.    Analysis**

12      **1.    Stating a claim under 42 U.S.C. § 1983**

13 Section 1983 "is not itself a source of substantive rights, but merely provides a
14 method for vindicating federal rights elsewhere conferred."  Graham v. Connor, 490
15 U.S. 386, 393-94 (1989) (internal citations omitted); Crumpton v. Gates, 947 F.2d 1418,
16 1420 (9th Cir. 1991).  Because a plaintiff has no cause of action directly under the
17 United States Constitution, a litigant seeking damages based on a violation of a
18 constitutional right must use 42 U.S.C. § 1983 as his cause of action.  Azul-Pacifico,
19 Inc. v. City of Los Angeles, 973 F.2d 704, 705 (9th Cir. 1992).

20 To state a claim under § 1983, a plaintiff must allege two essential elements.
21 First, the plaintiff must allege that the defendant acted "under color of law," and second,
22 the plaintiff must allege that the "injury he suffered at the [defendant's] hands infringed
23 a right guaranteed by federal law or the federal Constitution."  Shah v. County of Los
24 Angeles, 797 F.2d 743, 746 (9th Cir. 1986).

25 When a plaintiff alleges violations of state law, "[t]o the extent that the violation
26 of a state law amounts to the deprivation of a state-created interest that reaches beyond
27 that guaranteed by the federal Constitution, § 1983 offers no redress."  Sweaney v. Ada
28 County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (quoting Lovell v. Poway Unified

1  Sch. Dist., 90 F.3d 367, 370 (9th Cir. 1996)); see also Ove v. Gwinn, 264 F.3d 817, 824
2  (9th Cir. 2002).  In other words, § 1983 does not provide a cause of action for a
3  violation of state law unless the violation of state law is also a violation of a federal
4  constitutional right.   Lovell, 90 F.3d at 370; Moreland v. Las Vegas Metropolitan
5  Police Dep't, 159 F.3d 365, 371 (9th Cir. 1998); Draper v. Coombs, 792 F.2d 915, 921
6  (9th Cir. 1986); Ybarra v. Bastian, 647 F.2d 891, 892 (9th Cir. 1981).
7         As an initial matter, Plaintiff incorrectly opposes Defendants' characterization
8  of his complaint as one brought under § 1983.  Plaintiff titles his complaint as an action
9  for "Civil Rights Violations," and throughout his complaint he asserts that his claims
10 are for civil rights violations and violations of constitutional rights.  (Compl. ¶¶ 1, 20,
11 29, 33, & 38.)  As noted above, "a litigant complaining of a violation of a constitutional
12 right must utilize 42 U.S.C. § 1983."  Azul-Pacifico, 973 F.2d at 705.  Further, Plaintiff
13 alleges that Defendants were acting under color of state law when they took the actions
14 described in the complaint.  (Compl. ¶¶ 1-13.)  Accordingly, interpreting Plaintiff's
15 complaint liberally, his claims are most properly construed as being brought under §
16 1983.  See, e.g., Gagliardi v. McWilliams, 834 F.2d 81, 82 & n.1 (3d Cir. 1987)
17 (construing complaint grounded in criminal civil rights statutes as more properly based
18 on 42 U.S.C. § 1983).
19     **2. Due Process Claims**
20        The majority of Plaintiff's complaint focuses on alleged due process violations.
21 He brings both direct claims, in which he alleges that particular Defendants themselves
22 took actions to deprive him of his due process rights, and indirect claims, in which he
23 seeks to hold some Defendants liable based on supervisory liability.  With regard to his
24 due process claims, in Count I, he asserts: (1) that Defendant Rowe violated California
25 regulations when he failed to give Plaintiff written notice that CDC sought to collect a
26 DNA sample before issuing the RVR; (2) that Defendant Rowe violated California
27 regulations when Plaintiff was not provided with a staff assistant or investigative
28 employee to aid in the preparation of his defense on the violation; (3) that Defendant

Stratton violated California regulations when he conducted the hearing outside Plaintiff's presence; and (4) that Defendant Doe 2 falsified portions of the record of the hearing to reflect Plaintiff's participation.

Plaintiff brings additional claims in Counts II, III, and IV. In Count II, Plaintiff alleges that Defendant Rowe failed to follow California regulations related to progressive discipline when Defendant Rowe issued Plaintiff a rules violation report without first seeking to verbally counsel him or conduct a custodial counseling session. In Count III, Plaintiff alleges that Defendant Edwards refused to accept his initial appeal of the violation for filing. Finally, in Count IV, Plaintiff alleges that CDC, the Office of the Director of CDC, and the State Board of Control refused to process his appeals.

Before reaching Plaintiff's underlying allegations of due process violations, the Court must consider the effect of Plaintiff's successful administrative appeal. Courts have found that, when procedural errors are corrected during the administrative process, "there has been no compensable due process violation. The appeal is considered part of the process afforded, and any error in the process can be corrected during that appeals process without necessarily subjecting prison officials to liability for procedural violations at lower levels." Torricellas v. Poole, 954 F. Supp. 1405, 1414 (C.D. Cal. 1997); see also Wycoff v. Nichols, 94 F.3d 1187, 1189 (8th Cir. 1996) (rehearing and reversal cured alleged due process violations); Morissette v. Peters, 45 F.3d 1119, 1122 (7th Cir. 1995) ("no denial of due process if the error the inmate complains of is corrected in the administrative appeal process"); Young v. Hoffman, 970 F.2d 1154, 1156 (2d Cir. 1992) ("The administrative reversal constituted part of the due process protection [Plaintiff] received, and it cured any procedural defect that may have occurred. We believe that, as a policy matter, this possibility of cure through the administrative appeals process will encourage prison administrators to correct errors as an alternative to forcing inmates to seek relief in state or federal courts.").

On October 1, 2004, Acting Chief Deputy Warden Ochoa at Calipatria determined that a procedural violation had occurred during Plaintiff's hearing. (Compl.

Ex. C.) As a result, Warden Ochoa dismissed the rules violation and expunged all documentation related to the violation. (Id.) Further, Warden Ochoa indicated that any remaining credit forfeiture related to the violation would be restored. (Id.) Plaintiff does not allege that he was subjected to any discipline other than the temporary loss of time credits for the period between the hearing and his successful appeal. For example, he does not allege that he was placed in any sort of segregated environment as a result of the violation. In fact, he alleges that he did not even learn of the guilty finding and loss of credits until he applied for honor housing at Lancaster. Further, although Plaintiff asserts that Defendant Edwards refused to accept his appeal for filing and that Defendant CDC and the State Board of Control similarly failed to process his appeal, Plaintiff was successful in overturning the guilty finding. Thus, even assuming that Defendants committed procedural errors in disciplining Plaintiff and in handling his appeal, because the procedural errors were corrected during the administrative appeals process, "there has been no compensable due process violation." Torricellas, 954 F. Supp. at 1414. The appeal constituted part of the due process Plaintiff received.

Plaintiff's only other complaint arising out of Defendants' alleged due process violations is that he was ineligible for honor housing. (Compl. ¶ 35.) As a general matter, prison regulations are "not designed to confer rights on inmates." Sandin v. Conner, 515 U.S. 472, 482 (1995). Although state laws and regulations "may under certain circumstances create liberty interests which are protected by the Due Process Clause," to rise to the level of a due process liberty interest, the deprivation must impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. In Sandin, the Court determined that disciplinary placement in segregated confinement for thirty days did not amount to an atypical and significant hardship, and thus, it did not create a due process liberty interest. Id. at 486. The Court explained that such confinement did not exceed similar discretionary confinement in either duration or scope, and placing the plaintiff there did not cause a major disruption in his environment. Id. In light of Sandin, Plaintiff's lack of

eligibility for honor housing falls far short of the sort of "atypical and significant hardship" creating a due process liberty interest. Moreover, Deputy Warden Ochoa explicitly stated that Plaintiff could reapply for the honor housing. (Compl. Ex. C.) Accordingly, Plaintiff cannot recover for his temporary loss of eligibility for honor housing.

Because Plaintiff can prove no set of facts in support of his due process claims, the Court dismisses them with prejudice.

### 3. Supervisory Liability for Due Process Violations

In Count II, in addition to his due process claims, Plaintiff asserts claims against Defendants Schoch, Carpio, Stratton, Leapheart, and Butler ("Defendant supervisors") based on their failure to discipline subordinates and for allowing the due process violations to occur. (Compl. ¶¶ 28-33.) Similarly, in Count IV, he asserts that the Office of the Director of CDC failed to discipline subordinates. (Id. ¶ 44.) As just discussed, however, the alleged due process violations of which Plaintiff complains are not actionable. Thus, his claims based on supervisory liability must also fail.

Moreover, respondeat superior liability is not recognized under § 1983, and defendants cannot be held liable simply because they allowed others to commit wrongs against an inmate. See Palmer v. Sanderson, 9 F.3d 1433, 1437-38 (9th Cir. 1993). Rather, "[l]iability under § 1983 must be based on the personal involvement of the defendant." Barron v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

Here, Plaintiff has not alleged any facts showing that any of the Defendant supervisors caused Defendant Rowe's actions. Instead, Plaintiff alleges that the Defendant supervisors and the Office of the Director of CDC failed to discipline Defendant Rowe. Accordingly, Plaintiff cannot recover against these Defendants for the acts of Defendant Rowe. Because there is no respondeat superior liability under § 1983, and because, as discussed above, the alleged due process violations are not compensable in any event, Plaintiff cannot amend his complaint to state a valid claim.

////

Accordingly, the Court dismisses Plaintiff's claims based on supervisory liability with prejudice.

### 4.     Equal Protection Claims

Plaintiff also indicates in his complaint that Defendants' actions denied him equal protection of the laws. (Compl. ¶¶ 1, 29, & 30.) The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). "The guarantee of equal protection . . . is not a source of substantive rights or liberties, but rather a right to be free from invidious discrimination in statutory classifications and other governmental activity." Harris v. McRae, 448 U.S. 297, 322 (1980) (citations omitted).

Conclusory allegations of discrimination are insufficient to withstand a motion to dismiss, however, unless the plaintiff alleges facts which may prove invidious discriminatory intent. Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977). Therefore, when an equal protection violation is alleged, the plaintiff must plead facts to show that the defendant "acted in a discriminatory manner and that the discrimination was intentional." FDIC. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991) (citations omitted). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979).

While the Supreme Court has recognized equal protection claims brought on behalf of a "class of one" in which the plaintiff does not allege membership in a protected group, the plaintiff must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).
////

1    Other than mentioning "equal protection" in three paragraphs, Plaintiff does not
2  make a single allegation related to an equal protection claim.  Plaintiff does not allege
3  that he is a member of a protected class or that he was treated differently than other
4  similarly situated inmates.  Further, the only injuries of which Plaintiff complains in the
5  Counts mentioning equal protection relate to the alleged lack of due process during the
6  hearing and the adverse decision.  Accordingly, because Plaintiff can allege no facts to
7  overcome these deficiencies, and because all of his allegations relate to due process
8  claims, his equal protection claims are dismissed with prejudice.

9    **5. Claims Against the Office of the Director of CDC and the State Board of**
10  **Control for Failing to Process Plaintiff's Subsequent Appeals**

11    In Count IV, although somewhat unclear, Plaintiff apparently brings claims
12  against the Office of the Director of CDC and the State Board of Control.  He alleges
13  that these Defendants failed to process Plaintiff's appeals and claims for damages.
14  (Compl. ¶¶ 40-45.)

15    The Eleventh Amendment prohibits suits against a state, and neither states nor
16  state officials in their official capacity are "persons" within the meaning of § 1983.
17  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); 42 U.S.C. § 1983.  "'[I]n
18  the absence of consent a suit in which the State or one of its agencies or departments is
19  named as the defendant is proscribed by the Eleventh Amendment.'" Papasan v. Allain,
20  478 U.S. 265, 276 (1986) (quoting Pennhurst v. Halderman, 465 U.S. 89, 100 (1984))
21  (alteration in original).  "This bar exists whether the relief sought is legal or equitable."
22  Id. (quoting Pennhurst, 465 U.S. at 100-01).

23    Accordingly, regardless of the basis for Plaintiff's claims against the Office of
24  the Director of CDC and the State Board of Control, those claims are barred by the
25  Eleventh Amendment.  Because no amended complaint could overcome the Eleventh
26  Amendment bar, the Court dismisses Plaintiff's claims in Count IV with prejudice.
27  / / / /
28  / / / /

**Conclusion**

For the reasons stated above, the Court **GRANTS** Defendants' motion to dismiss, and the Court **DISMISSES** Plaintiff's complaint with prejudice in its entirety.

DATED:     September 6, 2006

_____
Hon. Marilyn L. Huff, U.S. District Judge
UNITED STATES DISTRICT COURT

Copies To:

Shawn Taylor, pro se
K-66151 / C1-230
California State Prison, Los Angeles County
44750 60th St. West
Post Office Box 8547
Lancaster, CA 93539-8547

Bill Lockyear, Attorney General of the State of California
Jill Vander Borght, Deputy Attorney General
300 South Spring St., Suite 1702
Los Angeles, CA 90013